UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| THOMAS KLUTHO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:06CV1210 CDP |
| NEW DAY FINANCIAL, LLC, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

New Day Financial mailed Thomas Klutho a letter stating that he had been pre-approved for a home loan "for up to $395,375 or more." Klutho filed this purported class action claim, alleging that New Day Financial violated his rights under the Fair Credit Reporting Act because it obtained information about his credit without his consent in order to send him the letter. New Day Financial moves for judgment on the pleadings, arguing that it was allowed to access Klutho's credit information because the letter constituted a "firm offer of credit" as defined by the Act. Relying on the recent United States Supreme Court decision in <u>Safeco Ins. Co. of America v. Burr</u>, 127 S. Ct. 2201 (2007), New Day Financial also argues that it is entitled to judgment because it did not willfully violate the Act. I conclude that the offer here was so vague that it lacked any value to a consumer, and so Klutho has stated a claim. I also find that Klutho has

sufficiently pleaded a willful violation of the Act, so I will deny the motion for judgment on the pleadings.

**I.	Background**

The complaint alleges that in March or April 2006, Klutho received a "prescreened" promotional letter from New Day Financial. Klutho alleges that New Day Financial accessed his credit report without his consent to obtain the information for this prescreening.

The front side of the letter states in bold print: "Congratulations! You've been pre-approved for a home equity loan from NewDay Financial. Your NewDay funds can help keep up to $1,000 or more in your wallet each month," with a pre-approved amount of $395,375.00 in a black box listed above it. The body of the letter states:

> Allow me to offer my sincere congratulations! You have been PRE-APPROVED for a NewDay home loan for up to $395,375 or more. This may be used to refinance your current mortgage while rates remain low, or you could use it to cut your monthly payments by up to 50% or more and greatly approve your monthly cash flow.
>
> Even if you have little or no equity in your home, your NewDay loan is an excellent way to improve your financial situation for years to come. Here's how:
>
>> Reduce your monthly mortgage payments now. Rates are likely to rise in the coming months. We urge you to act swiftly to take advantage of today's better rates and

> save thousands.
>
> Eliminate your high-interest credit card bills and other debt through a debt consolidation plan. For example, if you're now paying $1,800 a motion for mortgage, credit cards, auto loans, and other bills- you could cut that to as little as $900 or less. That's $900 more in your pocket every month!
>
> Improve your lifestyle - you could use your NewDay home equity loan to get the things you need and want, such as a family room addition, kitchen makeover, a new roof, a new car or even your child's tuition bills!

We can help you accomplish many of your financial goals. Please contact us immediately at 1-888-222-4808 toll-FREE. For your convenience, you can also get started online, day or night, at www.NewDayYes.com. Upon your acceptance, you can have the money you need to meet and exceed your financial goals in as little as 10 days.

With a NewDay home loan you can actually reduce your monthly bills by up to 50% or more. That could easily leave you with an additional $800.00, $900.00, even $1,000.00 or more to spend or bank as you wish each month. In fact, you're already pre-approved for up to 125% of your home's value! You must call 1-888-222-4808 today and present your personal reservation number, 0806 4741 475, to authorize release of your funds!

A NewDay home equity loan may also offer considerable tax-time savings (consult your tax advisor for details). There are so many good reasons to take advantage of your pre-approved status and today's low rates while they last.

A notation at the bottom of the front side of the letter directs Klutho to "See reverse for Important Program Information." The reverse side of the mailer sets

out "Loan Requirements" in relevant part as follows:

> We must receive a response from you on or before the offer expiration date indicated. If we receive your response after the expiration date, we may require you to follow our normal application procedures and will evaluate your application based on our current underwriting criteria. This offer is for a secured loan only, and your residence is the collateral for this loan. You must comply with our additional loan program requirements and pay all applicable loan fees . . . We will determine the amount of your loan based on information obtained in processing this loan, including, but not limited to, the credit bureau information, appraisal, verification of income, and equity in your home. All applications are subject to current loan program terms and fees . . . The amount you save on your monthly payments may vary . . . In some cases, your new loan may have a longer term than on your current loans and the aggregate amount paid may increase.

The section entitled "Pre-Screen & Opt-Out Notice" informs Klutho that "information from a credit bureau was used in connection with this offer. You received this offer because we believe you satisfy our criteria for creditworthiness." Under "Withdrawal of Offer," the letter states:

> We may withdraw our offer entirely if updated information we receive from a credit bureau or the information in your application shows that you do not meet the criteria established for this offer. We may also withdraw this offer is you move outside our marketing area. In addition, we may withdraw our offer if the following conditions are not met: (1) You do not have at least the minimum lendable equity required for the loan program that you have requested; (2) You do not have sufficient income to repay the new obligation.

The mailer does not specify the APR or specific terms of the loan; it does not even

guarantee a minimum loan amount.

**II.     Motion for Judgment on the Pleadings Standard**

New Day Financial has moved for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P. The same standard of review governs a motion for judgment on the pleadings under Rule 12(c) as a motion to dismiss under Rule 12(b)(6). The purpose of such a motion is to test the legal sufficiency of the complaint. The court must assume all factual allegations of the complaint are true and must construe those allegations in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989). "The motion will succeed or fail based upon the allegations contained in the face of the complaint." McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007) (internal citations and quotation marks omitted). However, the factual allegations in the complaint must be more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

When ruling on a motion to dismiss, a court must primarily consider the allegations contained in the complaint, but other matters referenced in the complaint may also be taken into account. Deerbrook Pavilion, LLC, v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c).

Because the letter is attached as an exhibit to Klutho's complaint, I may consider its terms in ruling on the motion to dismiss.

**III. Discussion**

Congress passed the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., to preserve consumer privacy in the information maintained by consumer reporting agencies. See § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"). The act sets out certain permissible purposes for which a consumer reporting agency may release credit reports and prohibits other releases. § 1681b(a). Most of the permissible purposes involve situations where the consumer has authorized or initiated the release, but there are exceptions.

One of the exceptions allows a credit provider to access consumer information in order to make a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(I). This provision enables a credit provider such as New Day Financial to provide certain criteria to a credit agency and then to receive – without the consumers' consent – basic contact information about consumers who meet those criteria. The exception does not allow a potential lender to access the full credit report, but instead allows it to obtain the consumer's name, address, and

other information that does not identify any particular past credit transaction of that consumer.

In creating this exception, Congress allowed lenders such as the defendant to access credit reports for the purpose of making unsolicited mailings to consumers, so long as the lender actually offered the consumer something, that is, so long as the lender made a "firm offer of credit." As one court has noted, Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." Cole v. U. S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004) (quoting S. Rep. No. 103-209, 13 (1993)). "Congress apparently believes that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalog and sales pitches." Trans Union Corp. v. FTC, 267 F.3d 1138, 1143 (D.C. Cir. 2001).

Congress, however, did not specify what, if any, credit terms had to be included for something to be a "firm offer." The statute does not require the loan amount, interest rate, or a payback period to be stated. Instead, the FCRA defines "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the

offer." 15 U.S.C. § 1681a(l). The statute provides that the offer may be conditioned on three specific requirements. First, the creditor may apply additional pre-selection criteria relating to the consumer's creditworthiness. § 1681a(l)(1). Second, the offer may be conditioned on verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer." § 1681a(l)(2). Finally, the firm offer may be conditioned on the consumer's furnishing any collateral that was established before the selection of the consumer for the offer and was disclosed in the offer. §1681a(l)(3). The general definition of the word "offer" under federal law does not apply in this case because Congress has specifically defined the meaning of the phrase "firm offer."

Klutho is one of several plaintiffs who have recently filed actions under the statute after receiving unsolicited mailings from companies seeking to lend them money.[1] Courts deciding whether a particular flyer fits the "firm offer of credit" exception have struggled to articulate a consistent definition or test. In the other cases before me, I concluded that a firm offer of credit must have some value to a consumer that is more than nominal.[2] Both parties urge me to reconsider my

---

[1] See, e.g., MacDonald v. Nelnet, Inc., 477 F. Supp. 2d 1010 (E.D. Mo. 2007); Poehl v. Countrywide Home Loans, Inc., 464 F. Supp. 2d 882 (E.D. Mo. 2006).

[2] MacDonald, 477 F. Supp. 2d at 1013-14; Poehl, 464 F. Supp. 2d at 885-86; Klutho v. Home Loan Center, Inc., Case Number 4:06CV1212 CDP, 2006 WL 3836389 at * 3 (E. D. Mo. Nov. 1, 2006).

decision to use this test, but I continue to believe that it is the correct one so I will apply it here.

The "some value" test comes from Cole v. U. S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004). In Cole the court held that an unsolicited mailing offering a $300 credit that could only be used to purchase a vehicle at a particular car dealership did not have any value to the consumer, and therefore was not covered by the FCRA exception.[3] The court rejected the defendant's argument that some offer of guaranteed credit – no matter how small – met the statutory definition, because that would allow anyone to access a consumer's credit report simply by offering, for example, one dollar in guaranteed credit. So, the court reasoned, there must be "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." Id. at 726. Otherwise an offer of credit would be no more than a sham, or the equivalent of an advertisement. " . . . Congress did not intend to allow access to consumer credit information 'for catalogs and sales pitches.'" Id. at 727 (quoting Trans Union, 267 F.3d at 1143). Courts must look to the entire offer and all material conditions of the credit product to make this determination. If the offer was "a guise for solicitation rather than a legitimate credit product" it

---

[3] The Cole mailer appeared to offer other things, including a $2000 limit credit card and $19,500 auto financing, but because the flyer also said that approval of those offers was not guaranteed, the Court considered only whether the $300 credit had value.

cannot be a firm offer. Id. at 728. Additionally, the Court noted that terms such as interest rate, methods of computing interest, and length of repayment "may be so onerous as to deprive the offer of any appreciable value." Id.

The Seventh Circuit noted, in Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955-56 (7th Cir. 2006), that the value of an offer is an objective standard, and stated that courts should look to the four corners of the offer to determine whether it has value. More recently, in Perry v. First National Bank, 459 F.3d. 816 (7th Cir. 2006), the court found that an offer of a $250 limit credit card had sufficient value to fit the statutory exception, even though the interest rate was 18.9% and the fees would result in the consumer being billed $175 in the first monthly bill.

Several cases have interpreted Cole strictly, and have held that there can be no firm offer unless all material terms such as amount and interest rate are defined. For example, in Hernandez v. Chase Bank USA, N.A., 429 F. Supp. 2d 983 (N.D. Ill. 2006), the court found no firm offer of credit in a flyer stating that the recipient had been "pre-qualified for up to $100,000 or more" to be secured by the recipient's residence. The court held that the terms of the loan were so vague that they had no value to a consumer. The loan would only be issued depending on information to be provided by the consumer, and the terms could be changed without notice. 429 F. Supp. 2d at 988. In Murray v. E*Trade Financial Corp.,

2006 WL 2054381 (N.D. Ill. July 19, 2006), the court interpreted Cole to say that there is no value if the interest rate or repayment provisions are not included. Id. at *3. In Murray v. Finance America, LLC, 2006 WL 862832 (N.D. Ill. April 4, 2006), there was no firm offer where the amount of the loan, the interest rate, and length of time were not specified. See also Klutho v. Home Loan Center, Inc., No.4:06CV1212CDP, 2006 WL 3836389 (E.D. Mo. Nov. 1, 2006).

On the other hand, several courts have granted motions for summary judgment or to dismiss, finding that the firm offer of credit exception applied even in the absence of specified interest rates or other terms. In Murray v. HSBC Auto Finance, Inc., 2006 WL 2861954 (N.D. Ill. Sept. 27, 2006), the Court found a firm offer of credit where the flyer said the person had been pre-selected for an auto refinance loan in a minimum amount of $5000. The flyer also stated that the recipient might be able to reduce her rate by as much of 5.04%, and that percentage was based on the average rate reduction obtained by the defendant's customers. The court in Bonner v. Cortrust Bank, N.A., 2006 WL 1980183 (N.D. Ind. July 12, 2006), which was decided before the Seventh Circuit's Perry case, considered a credit card offer similar to that in Perry and concluded that it met the firm offer of credit definition. In Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053 (N.D. Cal. 2006), a mailer offering a minimum 20-year, $15,000

line of credit with a maximum interest rate of 24% was a firm offer of credit. See also Klutho v. GE Money Bank, No. 4:06CV1319HEA, 2007 WL 162291 (E.D. Mo. Jan. 17, 2007); Poehl v. Countrywide Home Loans, Inc., 464 F. Supp. 2d 882 (E.D. Mo. 2006).

Congress carefully crafted its definition of "firm offer" and chose not to require that the lender specify particular loan terms. Instead, Congress provided a number of "outs" for a lender, including additional pre-selection criteria, verification, and collateral requirements. If Congress had wanted the FCRA to require that loan amounts, interest rates, or payback times be specified in a "firm offer," it could have done so. So long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere solicitation, then the absence of interest rates and other terms does not prevent the offer from being a "firm offer of credit."

In this case, there is no value in this offer to distinguish it from a sales pitch. Here, all that the letter contains is a statement that Klutho has been approved for a "NewDay home loan for up to $395,375 or more." The letter does not include a minimum loan amount or interest rates. Telling Klutho that he has been pre-approved for some kind of home loan, in some amount, and then hypothesizing about the ways he could save or spend this money is of no more value than the car

loan offer in Cole: for all Klutho could tell from the mailing, New Day Financial might be offering him a loan of one dollar or some other nominal value. When the letter is evaluated objectively and in its entirety, it provides no basis for a consumer to regard it as an offer having any value, and there is nothing to distinguish it from any other unsolicited advertisement. Since New Day Financial allegedly accessed Klutho's credit report to get the information it needed to send him the letter, he has stated a claim for a violation of his rights under the Fair Credit Reporting Act.

Finally, New Day Financial also argues that it is entitled to judgment on the pleadings because its conduct was not willful. While I may well conclude that New Day Financial did not willfully violate the FCRA under the standards set out in Safeco Ins. Co. of America v. Burr, 127 S. Ct. 2201 (2007), that is a fact question that cannot be decided on the pleadings alone. Perhaps Klutho has evidence that New Day knew it was violating the statute. Perhaps Klutho can show that New Day was given advice that it might be violating the statute but chose to do so anyway. Safeco certainly would not preclude a finding of a willful violation in situations such as those. Because Klutho has sufficiently pleaded a willful violation of the FCRA, I must deny New Day Financial's motion for

judgment on the pleadings. This issue can, and I expect will, be re-raised on a motion for summary judgment.

## IV. Motion to Compel

New Day has filed a motion to compel Klutho to provide more complete answers to interrogatories and to produce additional documents. I have carefully reviewed the discovery requests and responses and the parties' briefs, and will order some, but not all of the material to be produced.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for judgment on the pleadings [#15] is denied.

**IT IS FURTHER ORDERED** that defendant's motion for hearing [#32] is denied as moot.

**IT IS FURTHER ORDERED** that defendant's motion to compel [#31] is granted to the following extent: plaintiff must provide further answer to interrogatory number 7 and subparts (e) and (f) of interrogatory number 13; plaintiff must produce all documents sought by the motion to compel, except that plaintiff may withhold any documents it claims are privileged **provided plaintiff provides a full and complete privilege log as required by Rule 26(b)(5).**

**Plaintiff must provide defendant all ordered information no later than December 3, 2007**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of November, 2007